82 So.2d 416

**Clara TALBERT   v.   Sidney S. TALBERT.**

**I Div. 597.**

Supreme Court of Alabama.

Sept. 15, 1955.

340

Wm. V. McDermott, Mobile, for appellant.

Harry Seale, Mobile, for appellee.

LIVINGSTON, Chief Justice.

This is an appeal by the respondent (the wife) from a decree in equity dissolving the marriage existing between the parties, and permitting both parties to marry again after sixty days. The decree provided for the payment of $30 monthly alimony.

The bill was by the husband, and alleged voluntary abandonment, occurring on, to wit, July 6, 1946, without fault on his part. The parties were married in 1941.

Appellant filed a cross bill seeking a divorce from bed and board and for maintenance and support, alleging voluntary abandonment of her by him, as well as cruelty. Section 36, Title 34, Code 1940. Appellant was forty-six (or forty-seven) years of age at the time of the trial. Appellee was seventy-four (or seventy-five). Appellant had been married twice before, and both of her former husbands were still living. She had a son by the first marriage, but no other children. Appellee had been married once before, and his wife had died leaving children now grown.

Appellee was a former master mechanic for the Louisville and Nashville Railroad Company. He had retired in 1945 and received a pension of $160 a month. He owned $8,000 in securities, owned a life interest in a house at 1207 South Washington Avenue, Mobile, Alabama, with remainder to his son. He also owned house No. 1211 South Washington Avenue (the two houses being in close proximity), in which he and his wife lived after they were married. In 1942, he deeded to appellant "an equal interest with him, under survivorship" (as expressed in the evidence) to the house No. 1211 South Washington Avenue.

About three months before July 6, 1946, above mentioned, at about 11:30 a. m., the wife left the home and went to Toledo, Ohio. She did not tell the husband where she was going and he had no idea she would not return that night. In a few days, she called him over the telephone and asked for money, saying she had gone to Toledo for treatment of her sinus. He complied with her request and sent the money to her. She was unable to remember at the time of the trial the name of the hotel at which she stopped or the street on which it was located; and there was never any treatment

for sinus given her while there. Her husband told her in the telephone conversation that he was going to move out of the house, and when she came back she could continue to live in it. She returned on July 6, 1946. The trial court must have found that he was not cruel to her, and that his treatment otherwise did not justify her staying three months in Toledo on a "trumped up" claim of sinus benefit; also that he was justified in moving out of the home while she was gone, and that it was not a voluntary abandonment on his part in doing so. Gee v. Gee, 249 Ala. 642, 32 So.2d 657. The parties did not thereafter live together as man and wife. He lived in another house belonging to him, and she lived in the house he had deeded to her. She testified that during the period of their separation, up to four years before the trial, he would often come over and have sexual relations with her. This was denied by him, and there were circumstances which cast suspicion on that claim, which are unnecessary to repeat. But even so, that is not a conclusive answer always to the claim of voluntary abandonment. Marsh v. Marsh, 250 Ala. 31, 33 So.2d 1; Campbell v. Campbell, 246 Ala. 107, 19 So.2d 354, 155 A.L.R. 130. The parties have not lived in the same house since three months prior to said July 6, 1946, when she returned from Toledo, and, therefore, the instant case is distinguished from Caine v. Caine, 262 Ala. 454, 79 So.2d 546.

Appellant claims that the contention of voluntary abandonment is refuted by a written agreement entered into between them on August 21, 1946. That agreement stipulated that the parties have agreed among themselves to separate for the time being, and to have separate abodes; that appellee did then and there pay appellant $500, and she agreed to use such part of it as necessary to pay her debts, including a doctor's bill, and the cost of awnings on her house, and for her attorney's fee; that he agreed to pay her $50 per month for her support and maintenance, and she was also to have the free use of the house No. 1211 So. Washington Avenue, where she could, if she wished, rent all or part of the same. It also provided that the agreement could be cancelled by either party as of the first day of any month by giving written notice to the other party. The terms of the agreement have been complied with. The $50 monthly has been paid.

On October 5, 1953, appellee wrote appellant a letter in which he expressed a desire to exercise the option to cancel the contract as of November 1, 1953. The original bill in this suit was filed October 13, 1953. Confirming a report of the register, the court in the final decree provided $30 monthly as alimony. Appellant was also awarded the use of the house No. 1211 So. Washington Avenue "as long as she lives."

With reference to that agreement and its influence on the issue of voluntary abandonment, we note that there is a principle that ordinarily when the complaining party agrees to a separation he cannot procure a divorce on the ground of voluntary abandonment. But there is an exception that where the agreement to separate was induced by the misconduct of the defendant, the plaintiff, notwithstanding such an agreement made at a later time, could still sustain the claim of voluntary abandonment. Gee v. Gee, supra.

The evidence is that appellant earns $95 a month, and rents out one or more rooms at $5 each per week. Appellee seems never to have failed to pay promptly, first, the $50, and now the $30 per month.

We think the trial court was not in error in holding that appellant's conduct when she went to Toledo and remained there three months was in substance, and effect, just cause for appellee not to live with her again, and to move away from the home, and that it supports his claim of voluntary abandonment of him by her. It likewise fails to support her claim in her cross bill of voluntary abandonment by him of her. The evidence supports the finding also that he was not cruel to her within the meaning of the statute.

The decree of the trial court is affirmed.

Affirmed.

LAWSON, STAKELY and MERRILL, JJ., concur.